UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEMITRIUS M. MALTOS, | ) |
| | ) No. CV-08-3023-JPH |
| Plaintiff, | ) |
| | ) ORDER GRANTING DEFENDANT'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on October 27, 2008.  (Ct. Rec. 13, 15).  Attorney D. James A. Tree represents Plaintiff; Special Assistant United States Attorney Terrye E. Shea represents the Commissioner of Social Security ("Commissioner").  The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) On October 20, 2008, Plaintiff filed a reply.  (Ct. Rec. 18.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 15) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 13.)

**JURISDICTION**

Plaintiff protectively filed applications for SSI and disability insurance benefits (DIB) on June 30, 2005, alleging

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 1 -

onset as of October 2, 2000.  (Tr. 71-74, 379-381.)  The
applications were denied initially and on reconsideration. (Tr.
37-40, 42-43, 383-386, 388-389.)   Administrative Law Judge (ALJ)
Mary Bennett Reed held a hearing on June 21, 2006.  (Tr. 394-431.)
Plaintiff, represented by counsel, and vocational expert Deborah
Lapoint testified.  On June 27, 2006, plaintiff's counsel advised
the ALJ he was amending the onset date to October 31, 2004.  (Tr.
57.)  Pursuant to plaintiff's counsel's request for an explanation
of the VE's process for determining the number of jobs within an
occupational title in the local and national economies, Ms.
Lapoint submitted a letter to the ALJ on June 26, 2006.  (Tr. 125-
127.)  The ALJ conducted a supplemental telephonic hearing on
November 29, 2006, at plaintiff's counsel's request.  (Tr. 58,
434-447.)  Ms. Lapoint again testified.  On December 18, 2006, the
ALJ issued a decision finding that plaintiff was disabled when
substance abuse is included.  The ALJ found DAA is a factor
materially contributing to plaintiff's disability determination.
The ALJ found that when DAA is excluded, plaintiff is not
disabled.  Accordingly, the ALJ found plaintiff not disabled.
(Tr. 23-24.)  The Appeals Council denied a request for review on
January 25, 2008.  (Tr. 6-9.)  Therefore, the ALJ's decision
became the final decision of the Commissioner, which is appealable
to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff
filed this action for judicial review pursuant to 42 U.S.C. §
405(g) on March 25, 2008. (Ct. Rec. 2,4.)

### STATEMENT OF FACTS

    The facts have been presented in the administrative hearing
transcript, the ALJ's decision, the briefs of both Plaintiff and

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 2 -

1    the Commissioner, and will only be summarized here.

2        Plaintiff was 36 years old on the amended onset date and 39
3    at the last hearing.  He has a high school education and attended
4    two years of vocational college.  (Tr. 397.)  Plaintiff has past
5    work as a nursery school attendant.  (Tr. 117.)  He was assessed
6    as HIV positive in 1994.  Plaintiff alleges disability as of
7    October 31, 2004, due to HIV, mental impairments, and fatigue.
8    (Tr. 84.)

9                    **SEQUENTIAL EVALUATION PROCESS**

10       The Social Security Act (the "Act") defines "disability"
11   as the "inability to engage in any substantial gainful activity by
12   reason of any medically determinable physical or mental impairment
13   which can be expected to result in death or which has lasted or
14   can be expected to last for a continuous period of not less than
15   twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The
16   Act also provides that a Plaintiff shall be determined to be under
17   a disability only if any impairments are of such severity that a
18   plaintiff is not only unable to do previous work but cannot,
19   considering plaintiff's age, education and work experiences,
20   engage in any other substantial gainful work which exists in the
21   national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
22   Thus, the definition of disability consists of both medical and
23   vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156
24   (9th Cir. 2001).

25       The Commissioner has established a five-step sequential
26   evaluation process for determining whether a person is disabled.
27   20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person
28   is engaged in substantial gainful activities.  If so, benefits are

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 3 -

1  denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If
2  not, the decision maker proceeds to step two, which determines
3  whether plaintiff has a medically severe impairment or combination
4  of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii),
5  416.920(a)(4)(ii).

6      If plaintiff does not have a severe impairment or combination
7  of impairments, the disability claim is denied.  If the impairment
8  is severe, the evaluation proceeds to the third step, which
9  compares plaintiff's impairment with a number of listed
10 impairments acknowledged by the Commissioner to be so severe as to
11 preclude substantial gainful activity.  20 C.F.R. §§
12 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P
13 App. 1.  If the impairment meets or equals one of the listed
14 impairments, plaintiff is conclusively presumed to be disabled.
15 If the impairment is not one conclusively presumed to be
16 disabling, the evaluation proceeds to the fourth step, which
17 determines whether the impairment prevents plaintiff from
18 performing work which was performed in the past.  If a plaintiff
19 is able to perform previous work, that Plaintiff is deemed not
20 disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).
21 At this step, plaintiff's residual functional capacity ("RFC")
22 assessment is considered.  If plaintiff cannot perform this work,
23 the fifth and final step in the process determines whether
24 plaintiff is able to perform other work in the national economy in
25 view of plaintiff's residual functional capacity, age, education
26 and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),
27 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

28     The initial burden of proof rests upon plaintiff to establish

a *prima facie* case of entitlement to disability benefits.
*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.
Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is
met once plaintiff establishes that a physical or mental
impairment prevents the performance of previous work.  The burden
then shifts, at step five, to the Commissioner to show that (1)
plaintiff can perform other substantial gainful activity and (2) a
"significant number of jobs exist in the national economy" which
plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th
Cir. 1984).

Plaintiff has the burden of showing that drug and alcohol
addiction (DAA) is not a contributing factor material to
disability.  *Ball v. Massanari*, 254 F. 3d 817, 823 (9th Cir.
2001).  The Social Security Act bars payment of benefits when drug
addiction and/or alcoholism is a contributing factor material to a
disability claim.  42 U.S.C. §§ 423 (d)(2)(C)and 1382a(3)(J);
*Sousa v. Callahan*, 143 F. 3d 1240, 1245 (9th Cir. 1998).  If there
is evidence of DAA and the individual succeeds in proving
disability, the Commissioner must determine whether the DAA is
material to the determination of disability.  20 C.F.R. §§
404.1535 and 416.935.  If an ALJ finds that the claimant is not
disabled, then the claimant is not entitled to benefits and there
is no need to proceed with the analysis to determine whether
substance abuse is a contributing factor material to disability.
However, if the ALJ finds that the claimant is disabled, then the
ALJ must proceed to determine if the claimant would be disabled if
he or she stopped using alcohol or drugs.

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner.

*Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### ALJ'S FINDINGS

At the outset, the ALJ found plaintiff met the DIB requirements through December 31, 2005. (Tr. 19.) The ALJ found at step one that plaintiff has not engaged in substantial gainful activity since the amended onset date, October 31, 2004. (Tr. 21.) At steps two and three, the ALJ found that plaintiff suffers from HIV infection and substance addiction disorder (alcohol), impairments that are severe but which do not alone or combination meet or medically equal a Listing impairment. (Tr. 21-23.) Plaintiff's physical impairments limit him to sedentary work, with additional limitations: (1) avoid occupations working with large crowds of people or children; (2) avoid likely exposure to infectious diseases such as at hospitals or health care facilities; and (3) avoid occupations where claimant would come in contact with blood or blood products. (Tr. 23,26-28.) When substance abuse is considered, plaintiff would likely miss two or more days a month due to his alcohol use and its sequelae. (Tr.

23.)   The ALJ found plaintiff credible "concerning the following symptoms and limitations when considering substance abuse: periodic gastritis, abdominal pain, pancreatitis and increased fatigue due to alcohol consumption." (Tr. 23.)   The ALJ found plaintiff's testimony that he has always taken his antiretroviral therapy medications is contradicted by documentary medical evidence. (Tr. 26.)   At step four, the ALJ found that when substance abuse is included, plaintiff is unable to perform his past relevant work. (Tr. 24.)   At step five, the ALJ found that with substance abuse, there are no other jobs plaintiff could perform. (Tr. 24-25.)   Because the ALJ found plaintiff incapable of work, he was disabled.   The ALJ then considered, pursuant to *Bustamante v. Massanari*, if plaintiff would be disabled if he stopped abusing substances. (Tr. 26.)   The ALJ concluded at the alternative steps two and three that plaintiff would have the severe impairment of HIV infection, an impairment which does not meet or medically equal a Listed impairment. (Tr. 26.)   At the alternative step four,  ALJ Reed found plaintiff could not perform his past relevant work. (Tr. 29.)   At the alternative step five, the ALJ relied on the VE's testimony and found that if plaintiff stopped abusing substances, he could perform other jobs, such as production assembler, telemarketer, or sewing machine operator. (Tr. 29.)   Accordingly, the ALJ found that plaintiff is not disabled as defined by the Social Security Act. (Tr. 30.)

### ISSUES

Plaintiff contends that the Commissioner erred as a matter of law by failing to (1) adopt the opinion of treating physician Neil Barg, M.D.; (2) find a severe mental impairment at step two; (3)

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                          - 8 -

1  fully develop the record of mental impairment; and (4) and meet
2  the burden at step five.  (Ct. Rec. 14 at 8-9.)  The Commissioner
3  responds that the ALJ appropriately weighed the evidence of
4  psychological impairment, developed the record, and met the step
5  five burden.  The Commissioner asks the Court to affirm the
6  decision.  (Ct. Rec. 17 at 6-20).

7                              **DISCUSSION**

8  **A. Weighing medical evidence**

9      In social security proceedings, the claimant must prove the
10 existence of a physical or mental impairment by providing medical
11 evidence consisting of signs, symptoms, and laboratory findings;
12 the claimant's own statement of symptoms alone will not suffice.
13 20 C.F.R. § 416.908.  The effects of all symptoms must be
14 evaluated on the basis of a medically determinable impairment
15 which can be shown to be the cause of the symptoms. 20 C.F.R. §
16 416.929.  Once medical evidence of an underlying impairment has
17 been shown, medical findings are not required to support the
18 alleged severity of symptoms.  *Bunnell v. Sullivan*, 947, F. 2d
19 341, 345 (9th Cr. 1991).

20     A treating physician's opinion is given special weight
21 because of familiarity with the claimant and the claimant's
22 physical condition.  *Fair v. Bowen*, 885 F. 2d 597, 604-05 (9th
23 Cir. 1989).  However, the treating physician's opinion is not
24 "necessarily conclusive as to either a physical condition or the
25 ultimate issue of disability."  *Magallanes v. Bowen,* 881 F.2d 747,
26 751 (9th Cir. 1989) (citations omitted).  More weight is given to
27 a treating physician than an examining physician.  *Lester v.*
28 *Cater*, 81 F.3d 821, 830 (9th Cir. 1996).  Correspondingly, more

weight is given to the opinions of treating and examining
physicians than to nonexamining physicians. *Benecke v. Barnhart*,
379 F. 3d 587, 592 (9th Cir. 2004).  If the treating or examining
physician's opinions are not contradicted, they can be rejected
only with clear and convincing reasons. *Lester*, 81 F. 3d at 830.
If contradicted, the ALJ may reject an opinion if he states
specific, legitimate reasons that are supported by substantial
evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44
F. 3d 1435, 1463 (9th Cir. 1995).

      In addition to the testimony of a nonexamining medical
advisor, the ALJ must have other evidence to support a decision to
reject the opinion of a treating physician, such as laboratory
test results, contrary reports from examining physicians, and
testimony from the claimant that was inconsistent with the
treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747,
751-52 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1042-43 (9th
Cir. 1995).

      Plaintiff contends that the ALJ failed to properly credit
the opinion of treating physician Neil Barg, M.D., that plaintiff
suffers from significant depression.  (Ct. Rec. 14 at 14.)  The
ALJ notes:

> There is a diagnosis from an unacceptable medical
> source [Christopher Clark, M. Ed.] in October of
> 2005 of depression along with an indication that
> the claimant would probably not need behavioral
> health care.  (Exhibit B-6F).  Dr. Barg stated in
> a few chart notes that the claimant possibly had
> depression which may or may not have been causing
> the claimant's fatigue but no psychotropic medication
> was rendered and no counseling or psychological
> testing recommended.  (Exhibit B-5F).

(Tr. 23.)

      The ALJ reviewed Dr. Barg's chart notes.  The Commissioner

points out that in December of 2000 [nearly three years before onset], Dr. Barg doubted the claimant's ability to maintain sobriety, and indicated that he would refer him to Comprehensive Mental Health for any assistance they may be able to provide in controlling his urge for alcohol and for his depression. (Ct. Rec. 17 at 7, citing Tr. 192.) The Commissioner notes that plaintiff did not identify Comprehensive Mental Health or any other mental health facility in his application. (*Id.* at n. 2, citing Tr. 86-88).

On May 25, 2004, Dr. Barg's chart notes indicate plaintiff had a severe problem with alcohol abuse and had been attempting to control it by going to counseling and had been somewhat successful, as the Commissioner observes. (Ct. Rec. 17 at 8, citing Tr. 220.)  On that same date, about five months before onset, plaintiff told Dr. Barg he was feeling quite well.

The ALJ notes that on October 24, 2004 [a week before onset], Dr. Barg opined that alcohol abuse and AIDS were moderate impairments and limited plaintiff to sedentary work. (Tr. 28, referring to Exhibit B-5F.)  He opined plaintiff "had possible depression based on fatigue issues which needed to be assessed," and recommended a psychological and alcohol evaluation. (Tr. 21, referring to Exhibit B-5F at Tr. 182.)  The ALJ notes plaintiff testified that he was more fatigued on the days he consumed alcohol. (Tr. 24, 27, referring to Tr. 416.)  On October 31, 2005, one year after onset, Mr. Clark evaluated plaintiff.  He diagnosed depression nos and noted no indication of DAA. (Tr. 334-337.)  As the ALJ indicates, Mr. Clark further opined that plaintiff probably does not need behavioral health care. (Tr. 22,

referring to Tr. 337.)

In December of 2005, the ALJ notes Dr. Barg again limited plaintiff to sedentary work. (Tr. 28, referring to Exhibit B-7F.) The ALJ observes that the "comments" section in this exhibit does not appear to be completed in Dr. Barg's handwriting, as it differs from his handwriting in the other reports. (Tr. 28.) ALJ Reed further observes that the complaints "and/or symptoms" are not documented in Dr. Barg's prior chart notes. The ALJ explicitly gave less weight to these limitations because they appear to be based on plaintiff's self-serving statements. (Tr. 28.)

March 16, 2006, Dr. Barg notes plaintiff "wants to start counseling." (Tr. 358.)

In April of 2006, about a year and a half after onset, Dr. Barg diagnosed *intermittent* depression and ethanol abuse. On April 11, 2006, Dr. Barg's chart notes indicate "when he takes his medicines [plaintiff] has excellent control of his viral load. Unfortunately, patient has intermittent depression and ethanol abuse." (Tr. 363.) The only examining psychologist diagnosed depression nos, but, as the ALJ points out, Mr. Clark erroneously failed to find that DAA is a contributing factor. Even without DAA, Mr. Clark felt that plaintiff's depression probably did not require behavioral healthcare. (Tr. 23, referring to Tr. 337.) The ALJ found Mr. Clark is an unacceptable medical source (because he is not a psychologist), and he appeared to base assessed social limitations exclusively on plaintiff's self-report. (Tr. 22-23.)

On June 6, 2006, Dr. Barg observes plaintiff had not been

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                          - 12 -

seen for five months. (Tr. 342.) His HIV was noted "under excellent control on current antiretroviral regime." (Tr. 342.) Later that month, Dr. Barg notes plaintiff resumed drinking. (Tr. 343.) The ALJ found plaintiff does not have a medically determinable mental impairment that is severe. (Tr. 23.)

To aid in weighing the conflicting medical evidence, the ALJ evaluated plaintiff's credibility and found him less than fully credible. (Tr. 27.) Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F. 3d 683, 688 (9th Cir. 2005).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F. 3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F. 2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F. 3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F. 3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F. 3d at 834; *Dodrill v. Shalala*, 12 F. 3d 915, 918 (9th Cir. 1993).

The ALJ relied on several factors when she assessed

plaintiff's credibility: plaintiff's current complaints of fatigue are undercut by the medical record, which shows few complaints of fatigue when abstinent from alcohol; plaintiff admitted in his applications that he was capable of performing all his activities of daily living without assistance, stopping work due to his fear of becoming seriously ill, not due to his then present condition; and plaintiff's statements of sobriety are contradicted by the medical records.  (Tr. 27-28.)

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony.  *Magallanes v. Bowen*, 881 F. 2d 747, 751 (9th Cir. 1989).  It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400.  The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review.  42 U.S.C. § 405 (g).

The ALJ's reasons for finding plaintiff less than fully credible are clear, convincing, and fully supported by the record. *See Thomas v. Barnhart*, 278 F. 3d 947, 958-959 (9th Cir. 2002)(proper factors include inconsistencies in plaintiff's statements, inconsistencies between statements and conduct, and extent of daily activities).  Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment also cast doubt on a claimant's subjective complaints.  20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F. 2d 597, 603 (9th Cir. 1989).

The ALJ notes after reviewing the evidence that "there is

very little mention of any mental impairment." (Tr. 23.) At step two, the ALJ concluded plaintiff does not suffer from a severe mental impairment within the meaning of the regulations. (Tr. 23.)

The ALJ properly discounted Mr. Clark's diagnosis, because it appeared to be based on plaintiff's unreliable self-reporting, Mr. Clark did not indicate whether he had knowledge of plaintiff's long standing alcohol abuse problem (as it is not mentioned in the assessment), and, as noted, because he is not an acceptable medical source. (Tr. 28.)  These are specific, legitimate reasons supported by substantial evidence.

The ALJ gave legitimate and specific reasons supported by the record for discounting some of Dr. Barg's opinions, as noted herein.  The ALJ assessed a RFC largely consistent with that assessed by Dr. Barg. To the extent the ALJ disagreed with Dr. Barg's opinions, she gave specific and legitimate reasons supported by the record for doing so.

The ALJ's unchallenged credibility assessment is supported by clear and convincing reasons.  Accordingly, ALJ Reed's step two determination that plaintiff's depression is non-severe (i.e., causes no more than a slight abnormality that would have no more than a minimal effect on his ability to work) is fully supported by the medical and other evidence. *See* 20 C.F.R. §§ 404.1521 and 416.921; Tr. 23, as is the assessed RFC.

**B. Duty to Develop the Record**

Plaintiff alleges that the ALJ failed to fully develop the record with respect to his mental impairments. (Ct. Recs. 14 at 14-15, 18 at 3-5.)

The Commissioner correctly responds that the ALJ's duty to

further develop the record is triggered only when the evidence is ambiguous or the record is inadequate to allow proper evaluation of the evidence. (Ct. Rec. 17 at 14-15, citing *Mayes v. Massanari*, 276 F. 3d 453, 459-460 (9th Cir. 2001) (internal citation omitted).

ALJ Reed found that the record contains scant evidence of depression.  The ALJ acknowledges that Dr. Barg, plaintiff's treating physician, thought at times plaintiff's fatigue may have been caused in part by depression.  The ALJ notes too that  the record shows plaintiff reported few complaints of fatigue when he was sober, and testified that he was more tired when drinking. The record contains evidence that plaintiff was less than fully compliant with medical treatment.  No psychotropic medication was prescribed.  The ALJ had no duty to further develop this record because it was adequate for proper evaluation of the evidence.

**C. Step Five**

Plaintiff challenges the step five finding for two reasons: the ALJ gave an incomplete hypothetical, and the VE's testimony was inconsistent with the DOT.  (Ct. Recs. 14 at 17-20, 18 at 8-10.) The Commissioner responds that the ALJ's hypothetical is complete because it includes the functional limitations supported by credible evidence.  The Commissioner does not address the DOT departure argument.  (Ct. Rec. 17 at 19.)

The Commissioner is correct that the ALJ's RFC and resulting hypothetical are based on the limitations found supported by credible evidence.  The ALJ's assessment of the medical opinion and other evidence has been addressed and found supported by the record and without legal error.  Accordingly, the hypothetical is

sufficient. *See Osenbrock v. Apfel*, 240 F. 3d 1157, 1165 (9th Cir. 2001).

Plaintiff argues that the ALJ's reliance on the VE's opinion is improper because the VE identified jobs in a manner inconsistent with the DOT. Plaintiff argues that the ALJ's limitation to sedentary, unskilled work is not consistent with the job of telemarketer, defined by the DOT as semi-skilled. And, plaintiff argues, the jobs of sewing machine operator and production assembler are defined as at least light rather than sedentary. (Ct. Rec. 18 at 9.) Plaintiff alleges that the only support the vocational expert gave for deviating from the DOT were vague references to market studies allegedly performed by her firm but not provided to the ALJ or counsel. Plaintiff contends the VE failed to provide "persuasive evidence to support the deviation," making the ALJ's reliance on the testimony improper. (Ct. Rec. 18 at 9-10.)

Following the first hearing, the VE submitted a letter attempting to describe the process she used in determining the number of jobs that exist within a given occupational title in the state and local economies. (Tr. 125.) Ms. Lapoint referenced and attached "the raw data from which the numbers were derived for all three occupations" identified: telemarketer (DOT 299.357-014), sewing machine operator (DOT 786.685-030), and production assembler (DOT 706.687-012). (Tr. 125.) Ms. Lapoint described how she reached the number of unskilled telephone solicitor positions:

> (4) The DOT assigns the occupation of Telephone Solicitor an SVP of 3, which makes it a Semi-Skilled rather than an Unskilled position. For some occupations, the actual requirements in the labor market differ from those defined in the DOT. This is one such case. As I testified during the 6/21/06 hearing, the occupation of Telephone Solicitor has

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 17 -

changed significantly in recent years following the
implementation of the Do Not Call Registry.  Rather than this
being a position in which Telephone Sales people make cold
calls to sell products
or services, it is likely to be a call center position
where a person is providing information or answers to
inquiries to inbound callers.  Labor market research
conducted in our office indicates employers typically
hire from a poll of inexperienced workers and provide
relatively brief training on the job, which is consistent
with the definition of Unskilled Work.

(Tr. 126.)

Ms. Lapoint notes some telemarketer positions require a
greater level of prior experience and skill.  She believes she
provides a "very conservative estimate" of the total number of
sedentary unskilled telemarketing positions by dividing the
total number of telemarketing positions in half.  (Tr. 126.)
Ms. Lapoint testified that the DOT's job title of telemarketer
has not been updated since the Do Not Call Registry went into
effect.  (Tr. 427-428, 439.)  Taken together, the VE's reasons
for departing from the DOT's listing of this position as
semiskilled is supported by persuasive evidence.  The ALJ
properly relied on the VE's testimony.

Ms. Lapoint notes the DOT classifies production assembler
as light, "but it is often performed differently in the labor
market.  Contacts with employers have indicated approximately
half the positions allow this assembly job to be performed
while seated, or with a sit stand option."  Accordingly, Ms.
Lapoint divides these positions in half to estimate the number
of available sedentary production assembly jobs.  (Tr. 127.)

Similarly, Ms. Lapoint's letter indicates that her
office's market research indicates approximately half of sewing
machine operators work at the sedentary (rather than light as

defined by the DOT) level.  (Tr. 127.)  Accordingly, she divided in half the total number of sewing machine operator jobs to determine the number of sedentary jobs available in this category.  (Tr. 127.)

After reviewing the record, it appears Ms. Lapoint's reasons for departing from the DOT are supported by persuasive evidence.  The ALJ gave plaintiff's counsel two opportunities to question Ms. Lapoint, both before and after reviewing her written report outlining the process she used to determine the number of available jobs.  The ALJ properly accepted the VE's reasons for her departures from the DOT.  Contrary to plaintiff's argument, *Johnson v. Shalala*, indicates that the DOT raises a presumption as to a job's classification, but the presumption is rebuttable.  *Johnson*, 60 F. 3d 1428, 1434-1435 (9th Cir. 1995).  Here, the VE's testimony adequately rebutted the presumption.  The ALJ did not err at step five.

<b>CONCLUSION</b>

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence..

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 15)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel for Plaintiff and Defendant, enter judgment in favor of Defendant, and **CLOSE** this file.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 19 -

1    DATED this 21st day of November, 2008.

2                              s/ James P. Hutton

3                         JAMES P. HUTTON
                    UNITED STATES MAGISTRATE JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                    - 20 -